# ROCK ISLAND COUNTY

*v.*

# RALPH SAGE.

1. BOUNDARY LINE—*between the counties of Rock Island and Whiteside.* In order to ascertain the boundary line between the counties of Rock Island and Whiteside, it is necessary to fix that portion of the line described as "the middle of the Marais d'Ogee slough or creek." It appears that at low water, at a point nearly equi-distant between the Mississippi river and Rock river, there is a strip of dry land called the "divide," running nearly north and south, and separating the waters of the two rivers. Thus, except in high water, there are two distinct sloughs, one communicating with Rock river, the other with the Mississippi river, with no distinctly marked channel between them. That branch of the Rock river division of this bayou which passes to the south of Philleo island, it is supposed, was originally the main bayou, and the thread of the stream, when the waters were high enough to flow from one river to the other, was through this channel; and at the time the boundary was established, in 1831, there is little doubt but the valley south of that island was known and recognized as the valley of the Marais d'Ogee. Then, the correct mode of fixing the line over the "divide," (which, at high water, is submerged, and over or across which the thread of the stream originally passed,) where there is no plain difference in the levels, is to follow a straight line between the nearest points known to be in the thread. Where there is a palpable difference in levels, the lowest ground must be sought.

2. In this approximation to the exact line called "the middle of the Marais d'Ogee," it was considered the thread of the stream was such that the lands in dispute in the case lie to the north and east of the line between the two counties, and therefore within the bounds of Whiteside county. The lands involved in the litigation were situate in sections four and nine, in township nineteen north of range three east of the fourth principal meridian.

3. SAME—*constitutionality of the act of* 1854. That act, having relation to the boundary line between the counties of Rock Island and Whiteside, did not undertake to ascertain where the boundary line was, but to substitute one line for another, and this without the sanction of the voters of the locality to be affected. For that reason the act was in contravention of sections two and four of article seven of the constitution of 1848.

APPEAL from the Circuit Court of Rock Island county; the Hon. GEORGE W. PLEASANTS, Judge, presiding.

Ralph Sage exhibited his bill in chancery in the court below, alleging that he is the owner of certain tracts of land

situate in the county of Whiteside, and described as follows: the west half of the north-west quarter and west half of the south-west quarter of section four; the east half of section five; the west half of lot two of the north-west quarter of section five, and the north-west quarter of the north-west quarter of section nine, all in township nineteen north of range three east of the fourth principal meridian.

The purpose of the bill was to settle the conflicting claims to these lands between the complainant and the county of Rock Island, the only question involved being the location of the boundary line between the counties of Rock Island and Whiteside.

The court below decreed in favor of the complainant, holding that the lands claimed by him are situate in the county of Whiteside. The county of Rock Island appealed.

Mr. ROBERT T. McNEAL, for the appellant.

Mr. CHARLES M. OSBORN, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

This is an appeal, brought by the county of Rock Island, from a decree of the circuit court, declaring the title to certain lands to be in Ralph Sage, the appellee, and enjoining the county from selling the same as the property of the county.

The lands in question are a part of what are known as swamp lands, which were granted by the United States to the State of Illinois, and by the State of Illinois to the several counties of the State in which they lie. Sage, the appellee, bought the lands in question from Whiteside county. The county of Rock Island claims that the lands in question lie within the boundaries of Rock Island county, and that hence the grant from the State was to Rock Island county and not to Whiteside county.

The determination of the question rests upon the ascertainment of the true line between these counties. The county of

Rock Island was created by an act of the General Assembly, approved February 9, 1831, (Laws of 1831, page 52). A portion of the boundary of Rock Island county is described in said act, as follows, to-wit: " *   *   * Thence up the middle of the main channel of Rock river, with the meanders thereof, to the confluence of the Marais d'Ogee slough or creek with said river; thence along the middle of said Marais d'Ogee slough or creek to the Mississippi river." By an act of the General Assembly, approved January 16, 1836, (Laws of 1836, page 274,) the county of Whiteside was created, and by that act a portion of its boundary is declared to be, " *   *   * thence down along the middle of Rock river to the middle of the Meredosia; thence along the middle of the Meredosia with the line of Rock Island county, to the Mississippi river."

The territory lying between the Mississippi river and Rock river, through which this boundary, mentioned in the acts of 1831 and 1836, ran, is low and marshy, constituting a valley between the high lands in Rock Island county and the high lands in Whiteside county. For the greater distance through this valley, from river to river, are sloughs, generally containing water, which, in a low stage of water, are fed by the drainage from the higher lands along their borders, and in a higher stage of water are supplied by back-water from each of the rivers. When the waters are sufficiently swollen, with no obstruction by ice gorges, a portion of the water of the Mississippi river passes through this valley into Rock river. When the waters are low, at a point nearly equi-distant between the two rivers there is a plateau or tract of dry land, known as the divide. This strip of dry land runs nearly north and south, separating the waters of Rock river from the waters of the Mississippi. Thus this swamp or valley, except in times of high water, is divided, and there are two distinct sloughs or bayous, one communicating with Rock river and the other with the Mississippi river, and in the present condition of the land there is no distinctly marked and palpable channel between these two sloughs.

As to this part of the line, the question, therefore, as to exactly where is the thread of the stream (when it is a stream) or where is the middle of the Marais d'Ogee, is one not free from difficulty. The testimony relating to this question of fact is very voluminous, and not entirely satisfactory. From a careful examination of it, however, we think a very decided weight of the testimony is in favor of the proposition that the thread of the stream or the middle of the slough is such that the lands confirmed to appellee by this decree lie to the north and east of the line between these counties, as established by the acts of 1831 and 1836, and are therefore within the bounds of Whiteside county.

The proofs, we think, satisfactorily show that that branch of the Rock river division of this bayou which passes to the south of Philleo Island was originally the main bayou, and that the thread of the stream (when the waters were high enough to flow from one river to the other) was through this channel. The exact line by which the thread of the stream did pass from the Mississippi division of this bayou to the head of the channel south of Philleo Island, is not clearly defined, but it seems apparent that it passed to the west and south of that island. It may have passed in a line nearly direct from a point well marked as such in the Mississippi division on section 36, thence across section 36, town 20, range 2, and across section 6, town 19, range 3, on a line passing a short distance north of the stone quarry, and this seems probable; but it may possibly have found its way across the divide by a more northerly route.

Under the proofs and the known history of the country, there can be but little doubt that the thread of the stream, in 1831 (when there was a stream), passed south of Philleo Island, and that at the time of the passage of that act the valley south of that island was known and recognized as the valley of the Marais d'Ogee. The correct mode of fixing the line over the divide, where there is no plain difference in the levels, is to follow a straight line between the nearest points known to be

in the thread. Where there is a palpable difference in levels, the lowest ground must be sought.

It would profit nothing to review, in detail, the testimony, and point out definitely the circumstances which bring us to this conclusion. The circuit court evidently so found, and we content ourselves on this point with simply affirming the finding.

It is contended, however, by appellant, that by an act passed March 4, 1854, (Laws of 1854, page 161,) the line between Rock Island county and Whiteside county was established otherwise, and that by that line the lands in question lie in Rock Island county.

On January 26, 1853, an act was approved, entitled "An act to perfect the line between Rock Island and Whiteside counties," reciting the passage of the act of 1831, and that "there is much diversity of opinion in regard to said line." By this act certain commissioners were named "to survey, mark and establish the boundary line between the county of Whiteside and Rock Island county," and providing that these commissioners should survey and locate the boundary line, "leading, as near as practicable, by legal subdivisions, along the middle of the Marais d'Ogee slough."

The act of 1854, relied upon by appellee, is entitled "An act to amend" the act of 1853. This act of 1854 recites the passage of the act of 1853, and that only one of the commissioners mentioned in that act took any action under it, and that that commissioner, "with the citizens of each county, agreed upon the following line to separate said counties," setting forth the line agreed upon, and enacts that the "line above established shall be and the same is hereby established as the boundary line to divide said counties of Rock Island and Whiteside."

Upon an examination of the line mentioned in the act of 1854, which is thus declared to be established as the boundary line, it is found that it does not follow the thread of the Marais d'Ogee slough, or creek, at all, and does not pretend to

follow it.   Some points of the line so established are at least a mile from the nearest point of the creek, and this at points where the slough, or creek, is well defined and its location free from dispute.

From the uncontradicted evidence in the case, there is no difficulty in following, without question, the channel of the Marais d'Ogee slough from the point where it connects with Rock river, to a point near section 9, (a distance of about three miles,) in township 19, range 3.   Thus far there is no dispute as to where the statute of 1831 established the line, and thus far there is no difficulty in determining where that line is.   At that point, in ascending from Rock river, the slough forks, and by appellant it is claimed that the more eastern branch is the main slough, and by appellee, that the more western branch is the main slough.   There may be difficulty in determining whether appellee or appellant be right on this question; but that question being determined, there is no difficulty in following the slough, if appellant's theory be adopted, to the east of, and around to a point north of, Philleo Island; and if appellee's theory be adopted, there is no difficulty in following the slough to a point south of, and near the west end of, Philleo Island.   Had the legislature declared the eastern branch of this slough to be the main slough, and the true line, or the western branch of the Rock river division of the slough to be the true line, the statute might not necessarily have been regarded as an act to change the line between the counties, for that may have been matter in doubt.

Again, by the concurrence of all the testimony on that subject, the Marais d'Ogee slough is well defined from a point on section 26, in town 20 north, range 2 east, to the Mississippi river.   That part of the boundary needed no fixing, or defining. It was well defined by the act of 1831, and by the actual existence of a palpable watercourse and channel.   The only difficulty in finding the line named in the act of 1831 consisted in finding the proper place at which the divide between these two branches of the slough should be crossed.

The line attempted to be established by the act of 1854 does not at all conform to the line of the act of 1831, in those parts about which there can be no question. Though the Marais d'Ogee slough, from its connection with Rock river up to the "divide," as it is called, is, by the concurrent testimony of all the witnesses, and by the showing of all the maps, distinctly marked and very crooked, still, the line mentioned in the act of 1854 makes no reference to the Marais d'Ogee slough, after leaving the bank of Rock river, until it reaches the north line of section 23, in township 20 north, range 2 east, (a distance of some eight or nine miles,) and there we find the words, "to the main channel of the Marais d'Ogee slough; thence, with the center of said slough, to the Mississippi river."

It is evident that the line mentioned in the act of 1854 is essentially and materially different from the line established by the act of 1831, and that the act of 1854, while professing to fix, ascertain and establish the old line, was, in fact, a statute passed for the purpose of changing the line and establishing a new line. The distance from the Mississippi to the Rock river, through this valley, must be near fifteen miles. Upon no hypothesis consistent with the testimony can there be any difficulty in ascertaining the line established by the act of 1831, except for a distance, upon one theory, of about half a mile, and upon another theory, of about a mile and a half. Yet, by the act of 1854, the line, for at least eight miles, is located upon ground which was palpably known not to be the middle of the Marais d'Ogee slough. In other words, the line of 1854 struck from the county of Whiteside certain parcels of land which, before that time, were a part of that county, and placed the same in the county of Rock Island. It also struck from the county of Rock Island certain parcels of land which, before that time, were in that county, and placed the same in the county of Whiteside.

This presents the question as to whether that statute is not in violation of sections 2 and 4 of article 7 of the then Constitution of this State:

"SECTION 2. No county shall be divided, or have any parts stricken therefrom, without submitting the question to a vote of the people of the county, nor unless a majority of all the legal voters of the county voting on the question shall vote for the same."

"SECTION 4. There shall be no territory stricken from any county unless a majority of the voters living in such territory shall petition for such division; and no territory shall be added to any county without the consent of a majority of the voters of the county to which it is proposed to be added."

· We think this statute of 1854 in violation of these provisions of the Constitution. In this case, the proof shows that the question of changing the county line was not in any manner submitted to the people of either county, or to the voters occupying the ground, if any, which was changed from one county to the other. It is not doubted that the legislature has the power, without submitting the question to the voters for approbation, to take measures to ascertain, and definitely determine and mark a boundary of a county where there is uncertainty as to where the line is; but this act of 1854 does not pretend to attempt to follow the line of 1831. In the act of 1853, to which this act of 1854 is an amendment, the commissioners were directed "to survey and locate the boundary line, *leading, as near as practicable, by legal subdivisions, along the middle of the Marais d' Ogee."* The act of 1854 is drawn upon the same theory, which was to substitute (for about eight miles) in lieu of the thread of the slough, or creek, the land lines by the government survey that might approximate to the thread of the stream. This is not ascertaining where the line is, and marking it definitely. It is the substitution of one line for another. In other words, it is the changing of a county line; and by its operation, if valid, it necessarily strikes territory from one county and places it in another. This can not be done by the legislature without the sanction of the voters, as required in the Constitution.

We think, therefore, that the circuit court was right in holding the act of 1854 to be unconstitutional and inoperative, in so far as it purported to transfer the lands in question from the county of Whiteside to the county of Rock Island.

The decree must be affirmed.

*Decree affirmed.*